

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-19-00362-CR**

**EX PARTE GLENDA HAMMONS**

**From the 54th District Court**
**McLennan County, Texas**
**Trial Court No. 2019-3806-02**

---

## CONCURRING OPINION

---

This issue, including the related analysis, is deceptive. It initially appears simple and straightforward. Then the more you read, study, and think on it, the more problems you begin to see; and you realize what a broad statute the legislature laid out to circumscribe conduct that causes a mental injury.

But first, let me begin with the kudos. The legislature is to be commended for recognizing the critical distinction between physical injury to the brain and injury to the mind. The subdivision of the statute at issue deals with injury to the mind. It is an effort to criminalize behavior that adversely affects the mind.

While I believe there is a core of conduct that is sufficiently understood as defining criminal conduct sufficient to overcome a challenge to the entire subdivision being

unconstitutional on its face, I have serious concerns about the breadth of parts of the statute and tailoring the application of the statute in particularized situations. For example, in discussion of the statute, the State and the Court both observe that causing serious "mental harm" is adequately understood as being criminal conduct under the statute. But the term mental "harm" is not in the statute. I believe there will be many difficulties encountered in the application and enforcement of this statute. In part, this observation is based on the extent to which the Court of Criminal Appeals has struggled with a somewhat related concept. With the aid of many experts, the Court of Criminal Appeals has struggled mightily with defining / describing / creating / articulating a proper test to determine when a person is so mentally deficient ("intellectually disabled") that the person cannot be executed. *See Penry v. State*, 691 S.W.2d 636, 652 (Tex. Crim. App. 1985); *Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989); *Penry v. State*, 903 S.W.2d 715 (Tex. Crim. App. 1995); *Penry v. Johnson*, 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Penry v. State*, 178 S.W.3d 782 (Tex. Crim. App. 2005). *See also, Petetan v. State*, No. AP-77,038, 2021 Tex. Crim. App. LEXIS 521 (Crim. App. May 12, 2021) (publish).

My concern extends from the core to the fringes of attempting to enforce, or the coercive use of, this subsection. If a child in foster care is diagnosed with PTSD, an attachment disorder, or any other of the myriad of diagnosed mental disorders, has the child suffered the requisite level of injury to charge those who are caring for the child with a crime? When did the child suffer the injury? Are parents, CPS investigators and staff, foster parents, and other persons toiling away in our foster care system going to

have to worry that an overzealous DA will charge them with a crime because of injuries that are difficult to describe, define, and that have limited, if any, objective manifestation of the symptoms to be able to identify and attribute or connect them to the cause of the injury? Will an overzealous DA use the statute to overcharge a defendant to extract a plea deal on what would otherwise be "routine" assault charges?

Virtually every victim of violence, and especially those of sexual assaults, suffer some level of mental harm. How much harm does it take to be a serious mental injury? Society is filled with events for which we worry about the adverse mental consequences such as domestic violence, video violence, indoctrination in beliefs of which some portion of society disapproves, as well as the perceived adverse consequences that bullying and micro-aggressions may have on children. There are even counselors provided to jurors as a result of having to serve on cases involving particularly violent or gruesome crimes and some of those jurors fall into the definition of elderly individuals. Have the members of the judicial system opened themselves to being charged with causing serious mental injury by recognizing the need for counselors? What is the evidence to establish the causal connection between the action or inaction and the injury? Can you be charged with inaction for injuries you could have prevented even though you otherwise have no duty to act? And really, the mental "harm" does not solve the problem. Does "harm" require a physical manifestation as in civil cases to obtain monetary damages? *See Ex parte Ellis*, 609 S.W.3d 332, 340 (Tex. App.—Waco 2020, no pet.) (Gray, C.J., dissenting).

Yes, there are huge hurdles to overcome to prove a violation of this statute. And while I would like for our legislature to have substantially narrowed and defined the

conduct that is criminal for this subsection of the statute, I do not believe the entire subsection of the statute is so broad as to be unconstitutional. With these comments, I concur in the Court's judgment which affirms the trial court's order; but because of the deceiving simplicity of the analysis, I did not want even the casual reader to walk away from the issue without some awareness of the complexity of the statute and asking: What if?

TOM GRAY
Chief Justice

Concurring opinion delivered and filed May 26, 2021

